IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 5:14-CR-3(MTT) |
| v. | |
| JACKIE ELVINE<br>　aka Jackie Young | Filed at 3:43 PM<br>1/17 20 14 |

## PLEA AGREEMENT

It is agreed by the United States of America, by and through its undersigned attorney, and **Jackie Elvine**, hereinafter referred to as "Defendant," and defendant's undersigned attorney, as follows:

(1)

Defendant acknowledges that defendant has reviewed and discussed the Information against defendant in this matter with defendant's attorney and defendant's attorney has explained to defendant her understanding of the government's evidence.

(2)

The defendant understands that defendant is not required to plead guilty, and that defendant has the right to plead not guilty and to elect instead to be tried by jury. The defendant understands that at a jury trial, defendant would enjoy a presumption of innocence, and that the government would have the burden of proving defendant's guilt beyond a reasonable doubt. The defendant understands that defendant would be entitled to the services of a lawyer at all stages of such a trial. The defendant

1



understands that defendant would be entitled to confront and to cross-examine the government's proof, and to present witnesses and evidence in defendant's own behalf. The defendant understands that defendant would have the right to testify in defendant's own behalf, but that defendant could not be compelled to do so. Defendant has discussed these rights with defendant's attorney. Defendant is satisfied with the services of defendant's lawyer. Defendant knowingly and voluntarily waives defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

2



(A)     The defendant will knowingly and voluntarily enter a plea of guilty pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure to **Counts One through Five of the Information which charges defendant with Health Care Fraud, 18 U.S.C. 1347, (Counts 1-3), Aiding in the Preparation of a False Return, 26 U.S.C. 7206(2) (Count 4), and False Claims against the Government, 18 U.S.C. 287 (Count 5).**

(B)     That defendant fully understands that defendant's plea of guilty as set forth in Subparagraph (A), above, will subject defendant to a statutory penalty of **up to ten (10) years imprisonment, a maximum fine of $250,000, and a term of supervised release of three (3) years (Counts One through Three); a maximum term of three (3) years imprisonment, a maximum fine of $250,000 and a term of supervised release of three (3) years (Count 4); and a maximum term of five (5) years imprisonment and a maximum fine of $250,000, and a term of  supervised release of three (3) years (Count 5).** Defendant further acknowledges that the Court is required to impose **a mandatory assessment of $100.00 for each count.**

(C)     The defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that defendant may have received from defendant's counsel, the government, or the Probation Office.  The defendant further acknowledges and agrees that defendant will not be allowed to withdraw defendant's plea because defendant has received an estimated guideline range from the government, defendant's counsel, or the Probation Office which is different from the

3



advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D) The defendant understands fully and has discussed with defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed. The defendant understands and has discussed with defendant's attorney that the defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein. The defendant understands and has discussed with defendant's attorney that any objections or challenges by the defendant or defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.

(E) Defendant understands and has discussed with defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F) Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G) Defendant understands, and has fully discussed with defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that defendant agrees to pay the restitution ordered by the Court whether to an



identifiable victim or the community. Defendant agrees to pay restitution to the following victims in the following amounts:

| Victim | Amount |
|---|---|
| Internal Revenue Service | $94,890.00 |
| National Reimbursement Group | $118,446.84 |
| AFLAC | $147,483.56  G* |
| State of Georgia Department of Revenue | ~~$13,238.48~~ 11,188.48 gtG |

(H)   Understanding that Title 18, United States Code, Section 3742, provides for appeal by a defendant of defendant's sentence under certain circumstances, defendant by this agreement waives any right to a direct appeal or other review of defendant's sentence by the District Court or Court of Appeals after conviction.

(I)   The defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a defendant's sentence. But once this agreement is accepted and sentence is imposed by the District Court, defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the defendant's waiver includes any collateral attack on the District Court's sentence. However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.



The defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b). If, however, the United States Attorney notices an appeal of the defendant's sentence, then the defendant shall have the right to cross-appeal from the sentence.

(J) The defendant and the government stipulate and agree that there was no detected or identified biological evidence obtained during the investigation and prosecution of the matter which is subject to DNA testing. The defendant further agrees that all evidence obtained in this investigation and prosecution may be destroyed or returned to its rightful owner.

(K) Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding defendant's involvement and the involvement of all others involved in the charges alleged in the present **Information** as well as any and all criminal violations about which the defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement. The defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding. The defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the defendant to be truthful and to testify truthfully whenever called upon.



(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A) That he will accept the plea of guilty by defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of defendant's guilty plea, which might have been brought solely in this district against the defendant.

(B) That he further agrees, if the defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to defendant's cooperation, to make the extent of the defendant's cooperation known to the sentencing court. If the defendant is not completely truthful and candid in his cooperation with the Government, the defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Title 18, United States Code, Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range. If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence within one year of the

imposition of sentence. In either case, the defendant understands that the determination as to whether defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the defendant fail to cooperate truthfully and completely with the Government, or if the defendant engages in any additional criminal conduct, the defendant shall not be entitled to consideration pursuant to this paragraph.

(C)   Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the defendant in connection with defendant's cooperation and as a result of the defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in Title 18, United States Code, Section 924(e)(2)(B)(i), based on any information provided by the defendant in connection with the defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.



(D)   If the defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the defendant receive a downward adjustment in the advisory guideline range.  But the decision whether the defendant will receive any sentence reduction for acceptance of responsibility rests within the Court's discretion.  The United States expressly reserves its right to furnish to the Court information, if any, showing that the defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Nothing herein limits the sentencing discretion of the Court.

(6)

This agreement constitutes the entire agreement between the defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case.  In addition, defendant states that no person has, directly or indirectly, threatened or coerced defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(7)

As an aid to this Court, the United States Attorney and the defendant, by and through defendant's counsel, enter into the following Stipulation of Facts.  This

9



stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court.  Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

### Stipulation of Facts:

### Counts One through Three:

During early 2010, state revenue agents identified a series of false Georgia state tax returns which had been prepared and submitted by Jackie Elvine. After initial investigation, state revenue agents and Twiggs County Sheriff's deputies arrested Jackie Elvine for filing false tax returns with the state of Georgia.

After the arrest, state revenue agents identified several bank accounts held by Elvine and her business Young's Financial Billing Service, which held itself out as a tax preparation service.  Review of a SunTrust bank account held in the name of Young's Financial Billing Service revealed numerous checks from various private health insurance companies,  numerous checks from MEDIC, a Charlotte, NC based ambulance service, and numerous checks from the U.S. Treasury deposited into the account.  After identifying these deposits, state revenue agents contacted the IRS-CI and HHS OIG for assistance.



Until her arrest in June 2011 by State and local officials, Defendant worked as an account manager for National Reimbursement Group (NRG) (formerly Hinson Systems). NRG is a national medical billing service located in Macon that provides healthcare billing services for ambulance companies. As part of her duties as the Quality Assurance manager, Defendant routinely processed payments mailed to NRG from healthcare insurance companies into the accounting system and forwarded these checks to the client's bank account. Beginning in September, 2008 and continuing to October, 2010, Defendant diverted 57 checks that were issued from various private healthcare insurance companies, for legitimate services provided, to her own account and personal use. The total amount of these 57 checks was $43,137.50. Defendant used her knowledge of the billing software to offset other accounts in the exact amount of money that she took, thus it appeared as if the account balanced each day. Once Elvine obtained these checks, she forged the payees' endorsement on the back of the check and deposited the check into her account at SunTrust Bank.

While working at NRG, one of Defendant's largest accounts was a Charlotte, NC based ambulance company named MEDIC. As the Quality Assurance manager, Defendant routinely directed MEDIC to issue legitimate refund checks to individual beneficiaries and insurance companies for overpayments. Defendant used her position of trust as the MEDIC Quality Assurance manager and directed MEDIC to issue 85 fraudulent refund checks to persons she knew in the Charlotte, NC area. The total amount paid from MEDIC for these checks was $75,309.34. Defendant sent MEDIC, via email, a list of refund checks to be issued using names of persons she knew and



11

valid NRG account numbers.  In many of these cases, Elvine altered legitimate NRG invoices with the names of persons she knew.  The majority of these checks obtained from MEDIC by co-conspirator Latarsha Grant were sent via U.S. Mail.  Grant admitted to providing Defendant with addresses of persons she knew for some of the checks that were mailed, and to obtaining the checks from MEDIC.  Grant admitted that once she had the checks, she deposited them into her account at SunTrust Bank and electronically transferred half of the illegal proceeds to Defendant's account held in the name of Young's Financial Billing Service.  Grant admitted that she knew this was illegal at the time. On April 9, 2012, NRG entered into a settlement agreement with MEDIC, whereby NRG was obligated to make restitution to MEDIC for repayment of the funds misappropriated by Defendant, in the amount of $134,247.00.

Also, while working for NRG, Defendant enrolled in a supplemental healthcare insurance policy with American Family Life Assurance Company, AFLAC.  Beginning in 2007 and continuing through 2010, Defendant submitted 31 claims to AFLAC for injuries and illnesses that she knew were false.  Based on these claims, AFLAC paid Defendant $28,507.50 in insurance claims that she was not entitled to.  Elvine altered medical records to reflect her name and submitted falsified documents to AFLAC to make it appear as if she had legitimate hospital stays, physician appointments and ambulance transports.  Elvine further falsified physician signatures on a myriad of AFLAC claim forms to support her claims for bogus injuries and illness.

Defendant further assisted 9 of her co-workers in filing false claims to AFLAC. Defendant provided her co-conspirators with falsified medical records.  Defendant and



her co-conspirators submitted these falsified documents via fax to AFLAC along with claims they knew to be false. Based on these claims, AFLAC paid $119,483.56 to these 9 co-conspirators. Several of the co-conspirators made full admissions to investigating agents saying they knew this was illegal at the time. During these admissions, several co-conspirators admitted to splitting the illegal proceeds with Elvine. All of the checks issued by AFLAC were delivered to recipients via U.S. Mail. In total, AFLAC paid $147,483.56 in false claims, as a result of the false representations of Defendant and her co-conspirators.

**Count Four:**

Beginning in 2008 and continuing through 2010, Defendant established Young's Financial Billing Service in Jeffersonville, GA as a tax return preparation service. Elvine prepared and submitted hundreds of false tax returns to the U.S. Government. Elvine used legitimate clients and tax documents to prepare returns that she knew were false. On at least 61 of these returns filed with the U.S. Government, Defendant included a tax credit for first time home buyers that ranged in amounts from $4,800.00 to $8,000.00, the majority of which were for $7,500.00. Also claimed were numerous tax credits for higher education costs that she knew were not legitimate. As the tax preparer of the false tax returns, Defendant had most of her clients apply for and receive a refund anticipation loan through the Ohio Valley Bank which would issue the refund check directly through Defendant's office in Jeffersonville, GA. Some clients would pick up their check from Defendant and then reimburse her a portion of the refund. This was in



addition to a tax preparation fee that she was already receiving. Many of the refund anticipation loan checks were also deposited directly into Defendant's bank account at SunTrust. Defendant then paid some of the clients a portion of the tax refund and converted the remainder of the tax return to her personal use.

In 2009, Defendant prepared a tax return on behalf of JS, a taxpayer from Jeffersonville, GA. JS is a janitor for Twiggs County. Her wages for 2008 were $19,500.00. The return claimed a First Time Home Buyer Tax Credit in the amount of $7,500. In fact, JS did not acquire a home during the 2008 tax year and was not eligible for such a credit. The return claimed that the taxpayer had acquired a home located at 2446 Old Marion Church Rd. in Jeffersonville. JS once owned a mobile home at that location, but she did not acquire a home in 2008 or 2009. JS provided Elvine only with a W-2 form, and no further information pertaining to the acquisition of a home. Elvine prepared the return with no other information.

In addition, the JS' return falsely claimed an exemption for a dependent, "James Ashley", who is listed as her son. JS does not know "James Ashley" and he was not her dependent in 2008. The return also claimed deductions in the amount of $4,000 for tuition and fees incurred by "James Ashley" and another deduction for student loan interest of $2,500.00. The return also claimed an Earned Income Credit for the "James Ashley". According to JS, these credits and deductions are totally false and were created solely by Elvine.



**Count #5**:

In 2009, Defendant submitted a return in the name of MSH, listing an address in Jeffersonville, GA. The return claimed that MSH acquired a home in Jeffersonville, GA on November 8, 2008 and was eligible for a First Time Homebuyer Credit of $6800.00. (In fact, MSH had purchased the residence more than ten years earlier.) Based on the First Time Homebuyer Credit and additional withholding, the return claimed a refund in the amount of $7315.00. Based on the fraudulent return, the Internal Revenue Service approved a refund. After the tax return preparation fee and bank fees, a refund anticipation loan check of $6838.00 was issued by the Ohio Valley Bank directly through Defendant's office in Jeffersonville, GA.

MSH dealt directly with Jackie Elvine for the preparation of her 2008 tax return. Elvine told MSH that she was eligible for the First time Homebuyer credit, even though she had purchased the house several years earlier. After receiving the refund check, MSH cashed the check and then paid $500 to Elvine.

Subsequent to the filing of the tax return and receipt of the tax refund, MSH was contacted by IRS and asked to provide documentation for the purchase of the residence. MSH contacted Elvine, who told MSH that she (Elvine) could back date MSH's purchase agreement and return that to the IRS. MSH took the documentation to Elvine's business in Jeffersonville and picked it back up later along with the backdated copies to be provided to IRS. MSH subsequently spoke with her daughter who advised her not to send the altered documents to IRS. MSH disposed of the altered copies but kept her original documents that which showed the alterations made by Defendant.



For purposes of establishing the amount of relevant conduct under USSG Section 1B1.3, the Government and the Defendant stipulate that the total amount of fraudulent claims based on false First Time Homebuyer Credits attributed to Defendant was $283,683. The Government and Defendant stipulate that the actual loss sustained by NRG and MEDIC is in the amount of $118,446.84. The Government and Defendant stipulate that the actual loss sustained by AFLAC is $147,483.56.

The Government and the Defendant stipulate that the actual loss to Georgia Department of Revenue is ~~$13,238.48.~~ $11,188.48 [handwritten initials] GAT

(8)

## ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the defendant.

SO AGREED, this 17 day of Jan., ~~2013~~ 2014.

    MICHAEL J. MOORE
    UNITED STATES ATTORNEY

BY: /s/ Graham A. Thorpe
    GRAHAM A. THORPE
    GEORGIA BAR NO. 710650
    ASSISTANT UNITED STATES ATTORNEY
    MIDDLE DISTRICT OF GEORGIA
    P.O. BOX 1702
    MACON, GA 31202
    TEL. (478) 621-2700
    FAX. (478) 621-2655

I, **Jackie Elvine**, have read this agreement and had this agreement read to me by my attorney, Debra Gomez. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.

_____
Jackie Elvine
DEFENDANT

I, Debra Gomez, attorney for defendant **Jackie Elvine**, have explained the Information and the government's evidence received through discovery and my investigation of the charge to defendant. I believe defendant understands the charge against defendant and the evidence that would be presented against defendant at a trial. I have read this agreement, have been given a copy of it for my file, and have explained it to defendant. To the best of my knowledge and belief, defendant understands this agreement.

_____
**Debra Gomez**
ATTORNEY FOR DEFENDANT


